## George K. Newcombe v. Alonzo Chesebrough.

*Swamp-land road contracts: Reservation: Statute construed.* It is against the policy of the law to permit the question whether specific lands are reserved or not under the statute (*Comp. L. 1871*, § *3959*) providing for the reservation of lands selected by state road contractors, to be left open to private arrangement or to parol evidence.

*State roads: Board of control: Extension of contracts: Time specified.* The board of control, however, are given by the statute broad powers for extending the time for completing any contract, and as the statute expressly provides for the reservation of lands· selected by such contractors to apply on their contracts "during the full time specified in said contract for the completion thereof," any extension lawfully authorized by the board would become the "time specified," and the reserve would continue during that period.

*State roads: Contracts: Time specified.* But the time "specified in the contract" cannot be made to include any period not within the original contract or some authorized extension.

NEWCOMBE *v.* CHESEBROUGH.

*Boards: Joint action: Votes: Creating a term: Affirmative action.* The action of a board of several persons must be determined by their votes, as evidenced by their record; their action separately amounts to nothing; and their joint action must be evidenced in some way as the action of a lawful majority; and it requires affirmative action to create a term of "time specified."

*Swamp-land road contract: Reservation: Renewal: Vested rights.* During any interval that may elapse between the expiration of the original time specified in the contract and any subsequent renewal or extension thereof, there would exist no valid reservation in favor of the contractor; and where during such interval the lands have been lawfully patented to others, the board of control cannot, by afterwards renewing the contract, take away the rights thus vested in such patentees, although such renewal would bind the state to pay for the work.

*Heard January 12 and 13.     Decided January 21.*

Appeal in Chancery from Iosco Circuit.

*Gaylord & Hanchett* and *Ashley Pond,* for complainant.

*W. Scofield, E. W. Meddaugh* and *T. Romeyn,* for defendant.

CAMPBELL, J :

The bill in this case is filed to obtain from Chesebrough certain lands patented to him on the 11th of January, 1868, at which time complainant claims they were legally held for his benefit under a reservation upon a swamp-land road contract, and therefore not subject to private entry.

The contract, or contracts (for there were five of them), were made by the state authorities with one William Thorlby on the 6th of April, 1863, to build one mile under each contract of the Midland and Isabella state road. The work was to be done by November 4, 1864. Within that time it was accepted by the local commissioner, prior to October 4, 1864, when Thorlby died. On the 1st of October, 1864, the contracts were assigned to Frederick P. Shaw. The governor for a long time delayed acting upon the certificates of completion, but in August, 1865, David Crapo was directed by the governor to examine the road throughout, and reported it incomplete. Milton Bradley, local commissioner, subsequently examined it, and reported adversely.

On the 21st of August, 1867, Newcombe obtained an assignment of these contracts, and applied to the commissioner of the land office for a list of the lands reserved, which the commissioner sent him.    He then proceeded, under assurances of the local commissioner, to do the work and bring it to completion.    On the first of April, 1868, the board of control passed a resolution declaring that all contracts which "by their ₜterms" expired on or before December 31, 1867, should be canceled by the 1st of July, 1868, unless evidence should be furnished of their being performed properly, and directed notice to be given to contractors. Newcombe did not receive notice till July 2, when upon his representation the order was suspended, and the work was finally approved December 31, 1868.

On the 15th of January, 1869, on applying for patents, complainant learned the lands had been sold.

The main question in this case is, whether the reservation remained in force when this sale took place.    The statute declares that lands selected by contractors to apply on their contracts shall be "withheld from market *during the full time specified in said contract for the completion thereof.*"—*Sec. 5 of road law; § 3959 C. L.*

It also provides that the board of control may extend the time for completing any contract.—*Sec. 3 (§ 3957).* In this their powers are very large, and whatever they did concerning these contracts, we are disposed, as now advised, to assume was lawfully done, and binding on the state.

The question is, whether the reservation was kept alive all this time by what was done.

No action was taken by the board, one way or the other, until after defendant purchased the lands.    But there is evidence which seems to show that contracts while running uncanceled were regarded by them practically as in force. There is no official resolution to that effect.

When lands have once become subject to sale they may be reserved from sale in various cases, of which the contract reservations in question furnish a common instance.

But it is evidently the policy of the law that the question whether they are reserved or not shall not be left open to private arrangement or to parol evidence. Such a course would be open to frauds. This statute declares the reservation to last during the time "specified in the contract." This is very clear language, and must have been adopted for some purpose. That purpose is evident. It was to enable all persons to have means of definitely knowing whether the lands were in market, and probably, also, as a means of hastening tardy contractors.

But we think that whenever the board of control saw fit to extend a contract, the extension became the time specified, and the reserve would exist during that period. But as the board was the only body authorized to extend the contract, we cannot find any support for the claim that the time "specified in the contract" can include any period not within the original contract or some authorized extension.

It is well settled that the action of a board of several members must be determined by their votes, and the votes must be looked for in their record. Their action separately can amount to nothing, and their joint action, whether meeting or not meeting (supposing they can act by consent expressed by writing, upon which no opinion need be given), must be evidenced in some way as the action of a lawful majority. It must be affirmative action, or it cannot create a term of time "specified."

In the present case there was an interval of some years between the end of the time specified in the original contracts and any action of the board. During that interval we are compelled to hold there was no reservation, or else to completely disregard the only statutory conditions on which reservations were allowed to be made. The rights of defendant were obtained when the reservation was not in existence. The board of control could not, by subsequent action renewing the contract, take away his vested rights, although such renewal would bind the state to pay for the work. But contractors were not bound to file reservations unless they

chose, and the loss of these lands does not deprive complainant necessarily of his remuneration out of others. The loss of these arises from a breach of the Thorlby contracts, and the extension was never obligatory on the board, but they could grant it or not, in their discretion.

Under these circumstances, complainant has no ground for relief. The decree must be reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.